UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NICHOLAS BURDICK BEWLEY,

    Plaintiff,

v.                                                              ACTION NO. 2:17cv643

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Nicholas Burdick Bewley ("Bewley") seeks judicial review of the Acting Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Bewley claims that the Administrative Law Judge ("ALJ") improperly analyzed medical evidence, failed to give appropriate weight to the findings of a treating physician and consulting examiner as required by Federal Regulations, and erred in finding he was not disabled. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), and Rule 72(b) of the Federal Rules of Civil Procedure. This report concludes that the ALJ did not err in evaluating the medical evidence, and thus recommends that the final decision of the Commissioner be affirmed.

### I.    PROCEDURAL BACKGROUND

Bewley filed an application for DIB and SSI on April 14, 2014, alleging a disability onset date of August 1, 2002. (R. at 203, 211). The Commissioner denied his application initially, (R.

1

at 95), and upon reconsideration, (R. at 109). Bewley requested an administrative hearing, and received one on January 25, 2017. (R. at 29).

The ALJ determined that Bewley was not disabled within the meaning of the Social Security Act, and denied his claim for benefits. (R. at 14). The Appeals Council declined to review the ALJ's decision, (R. at 1), making the ALJ's decision the final decision of the Commissioner. Bewley filed this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). This case is now before the court in order to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Bewley was 23 years old at his alleged onset date 2002, and 38 at the time of the hearing. (R. at 32). He completed high school and had previously worked briefly as a painter and maintenance worker in a pool hall. (R. at 36, 228, 255). He was injured in a boating accident and later re-injured lifting a pool table in 2002. (R. at 37). He underwent spinal fusion surgery in 2002, and has never returned to work. (R. at 34, 36). In describing his physical activity during the application process, Bewley stated that he cared for himself. He drove, shopped in stores, managed his personal care, used the internet, read and watched T.V. (R. at 41-43). He testified he could walk 50 yards without a problem, lift 20 pounds, but stated he shouldn't lift anything heavy. (R. at 43). When asked how long he could remain seated, Bewley stated "I mean I can remain that way. It hurts like right now, but it's – that's something that will flare me up quick." (R. at 43). He also stated that sometimes his pain makes it difficult to sleep or do anything.

The ALJ found Bewley had only the severe impairment of degenerative disc disease and chronic pain syndrome. (R. at 16). His arguments in this court do not contest this aspect of the

2

ALJ's findings. As a result, the following review of his medical record is limited to his treatment for that condition.

Bewley's back pain began with an injury in 2001 which was aggravated in 2002 while he was moving a pool table at work. (R. at 37). The injury resulted in spinal fusion surgery when Bewley was 23 years old. (R. at 332). He has not worked since.

The medical record of his treatment since then primarily includes records from a primary care treating physician, Dr. Herbert Knight, whose records from 2011 to January 2017 mostly relate to ongoing medication management associated with Bewley's chronic pain. (R. at 306-29, 373-614, 675-744). At the beginning of this period, in October 2011,[1] he was reported to be "generally healthy, no change in strength or exercise tolerance." He had a full range of motion and stated that he was still in pain but that his pain medications were helping him to function. (R. at 455). His medications were adjusted and a follow-up scheduled in four weeks. On November 11, 2011, his appearance was largely the same, with complaints of pain but no paresthesia or numbness. Bewley stated that he needed to ween himself off Oxycodone and other medications were refilled. On November 22, he returned seeking a refill of Oxycodone which was refilled but at a reduced dosage. On December 5, his medications were adjusted again, discontinuing oxycodone and starting a new pain reliever, Norco. (R. at 451). Through the remainder of 2011, 2012, and 2013, examinations by Dr. Knight followed a similar pattern. Bewley was generally recorded as healthy, with no change in strength or exercise tolerance. He continued to complain of "chronic low back pain with limitations of range of motion, no paresthesia, or numbness." And his medications were adjusted. (R. at 415-59). Although at

---

[1] Dr. Knight's records include both typewritten and less-legible handwritten office notes. Though the cited records are from the typewritten portion of the file, the handwritten records appear to reflect a similar course of treatment.

times he complained of increased pain, throughout he stated that his pain medications helped him to function. (R. at 415-59).

On December 9, 2013, Bewley presented against to Dr. Knight for refills of his medication. On this occasion, he complained that his back pain was severe and that his medications were not helping him. He described his pain as 10/10 and stated that he had no quality of life. (R. at 415). Although he continued to have full range of motion in his extremities, his low back pain prevented him from bending more than 10 degrees. (R. at 415). Dr. Knight adjusted his medication and scheduled another follow-up visit. In January 2014, he returned for follow-up. Although his pain was still bad, Bewley stated that his medications were once again helping him to function. His medication management continued in a similar fashion during visits in February, March, and April 2014, during which he reported the adjustment in his pain medication was helping alot. (R. at 411).

In January 2015, Bewley had a fall in his residence followed by an episode of severe constipation which resulted in an emergency room visit. (R. at 349, 319). On examination there he showed no tenderness and a normal gait. His back pain was described as chronic and no worse than normal. He had normal strength, normal reflexes, and no weakness or numbness. (R. at 349). He reported to Dr. Knight on January 6, 2015 that these episodes left him bedridden and in severe pain. (R. at 398). On visits in February and March 2015, he continued to complain of severe pain and an inability to sleep. However, by April 27, he was again reporting that his pain medications were helping him to function. (R. at 393).

In March 2015, Dr. Knight completed a Residual Functional Capacity Questionnaire at the request of Bewley's attorneys. In the Questionnaire, Dr. Knight reported that Bewley had been a patient for seven years and had been diagnosed with chronic myofascial pain syndrome in

the lower back. He described his prognosis as fair. He stated that Bewley could only walk one city block without significant pain, that he could sit or stand only 10 minutes at a time and sit or stand zero hours in an eight-hour work day. Dr. Knight stated Bewley would have to take unscheduled breaks every 15 minutes, that he could never lift 10 lbs., and was likely to be absent from work as a result of his impairments for more than four times per month. (R. at 388-89).

In addition to Dr. Knight's records, the medical evidence included x-rays of Bewley's lumbar spine taken October 2014. The x-rays revealed the hardware associated with Bewley's previous fusion and no evidence of complication. (R. at 376). The images also revealed persistent lordotic curvature of the lumbar spine without listhesis, but no evidence of fracture or subluxation and no acute abnormality. (R. at 376). Likewise, in November 2016, an MRI revealed Bewley's spinal fusion as well as minimal degenerative disc disease and a mild annular bulge at L-3/L-4. The MRI revealed no stenosis or advanced foraminal narrowing at any level. (R at 645-46).

Bewley also consulted with a neurosurgical specialist, Dr. David Waters. He told Dr. Waters that he suffered from low back pain which was "fairly well controlled with his medications." (R. at 671.) Dr. Waters' exam showed good strength and sensation in his lower extremities, but poor mobility of the paravertebral muscles and hamstrings. Dr. Waters stated that he did not believe Bewley was a candidate for surgery and that low back pain "could possibly respond to increased flexibility training for his low back." (R. at 671-72). Bewley testified that he had been prescribed physical therapy but that he hadn't "gotten to one yet." (R. at 40).

In addition to his treating physicians, Dr. Waters and Dr. Knight, Bewley was examined by a consulting physician, Dr. Richard Hoffman. (R. at 332-35). During his examination, Dr.

5

Hoffman observed difficulty walking on heels or toes and tandem walking with significant pain through range of motion. (R. at 344). Bewley had a positive straight leg raising test at 40 degrees on the left and an unsteady gait. He reported to Dr. Hoffman that he used a cane for long walks and sometimes at his house. (R. at 344). Dr. Hoffman concluded that Bewley had degenerative disc disease with ongoing pain syndrome, a decreased range of motion and also was related to side effects of his narcotic pain medication.

Two state agency medical consultants, Dr. Luc Vinh and Dr. Wyatt Beazley, also reviewed Bewley's medical records. Both Drs. Vinh and Beazley concluded that Bewley could perform sedentary work lifting and carrying less than 10 lbs. frequently and 10 lbs. occasionally, stand for at least two hours and sit for at least six hours in an eight hour work day, but further limited him to only occasional climbing, kneeling, crouching, or crawling with no exposure to vibrations or hazards. (R. at 67-69, 105-07).

In his testimony before the ALJ, Bewley stated that his original injury occurred as a result of a fishing accident during which he landed a large fish. He exacerbated his injuries moving a pool table in 2002. Following surgery he has not worked, but testified that he attempted to obtain certification as a pharmacy technician. He stated he was unable to look for work as a pharmacy technician because of his severe pain. (R. at 38-39). He described spending most of his day watching television or using his phone or computer to go on the internet. He stated he could drive short distances and make short trips to the market, but did not help with household chores. He stated that he was able to handle his own personal grooming with some difficulty and described his primary occupation as managing his ongoing pain. (R. at 41). With regard to his physical capacities, Bewley stated that he could walk 50 yards and lift and carry 20 lbs. (R. at 44). In the function report submitted prior to the hearing, Bewley also described doing

laundry, light dusting, shopping for food once per month, and handling his personal finances. (R. at 248).

In addition to the medical evidence, the ALJ also received testimony from a Vocational Expert ("VE"). The VE testified in response to a hypothetical framed by the ALJ that an individual of Bewley's age, education, and work experience who is limited to sedentary work involving no more than occasional stooping and squatting, no crawling, and no climbing or work at unprotected heights could perform various jobs in the national economy. Specifically, the VE identified unskilled work as a food and beverage order clerk, sedentary assembler, and document preparer. (R. at 49). She also stated that her testimony was consistent with the Dictionary of Occupational Titles. (R. at 49-50). On cross-examination by Bewley's counsel, the VE stated that these jobs did require frequent reaching, handling, and fingering, but would allow an individual to sit or stand at will. (R. at 50-51). In addition, the VE stated that competitive work would ordinarily permit no more than one or two absences per month and that if Bewley needed to take unscheduled breaks every 15 minutes, he would be eliminated from competitive employment. (R. at 50-51).

In his motion for summary judgment, Bewley argues that the ALJ improperly weighed the medical opinion evidence. Specifically, he claims the opinion should have assigned more weight to the disability report prepared by one of his treating physicians, Dr. Knight. He also claims the ALJ relied too heavily on the opinions of non-examining agency consultants and improperly discounted the opinion of the agency doctor who did examine him. The Commissioner's motion argues that all of the ALJ's findings are supported by substantial evidence in the record.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence in the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV. ANALYSIS

To qualify for DIB under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five,

file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. See 42 U.S.C. §§ 416(i), 423.

> The Social Security Regulations define "disability" as the:
>
>> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. Sections 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps, the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d 1456.

A.  **The ALJ's Decision**

In this case, after conducting the foregoing analysis, the ALJ concluded that Bewley met the insured status requirements from his alleged disability onset date, August 1, 2002, through his date last insured, June 30, 2004, but had not been under a disability within the meaning of the Social Security Act between the alleged disability onset date and the date of the hearing. (See R. at 23).

At step one, the ALJ found Bewley had not engaged in substantial gainful activity after his alleged onset date in 2002 and through the date of the hearing. (R. at 16). At step two, the ALJ found that Bewley suffered from degenerative disc disease and chronic pain syndrome.[2] (R.

---

[2] The ALJ found Bewley's alleged mental impairments of attention deficit disorder and anxiety non-severe because they caused no more than minimal limitations in Bewley's ability to perform basic mental work activities. (R. at 17). Bewley has not presented a challenge to this finding in his motion for summary judgment in this court.

at 16 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c))). At step three, the ALJ found that Bewley did not suffer from a listed impairment or combination of impairments that met the severity of one of the listed impairments. (R. at 18). At step four, the ALJ found that Bewley had no past relevant work because he had not worked in 15 years. (R. at 21 (citing 20 C.F.R. §§ 404.1565, 416.965)). The ALJ then crafted an RFC designed to accommodate Bewley's several impairments as he had determined them. Specifically, he found Bewley had:

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), involves only occasional stooping or squatting, and no crawling, climbing, work around unprotected heights, or around hazards. The claimant is also limited to simple, repetitive, non-production tasks.

(R. at 18-21). At step five, relying on the testimony of the VE after presenting her with this RFC in hypothetical form, the ALJ concluded that jobs exist in significant numbers in the national economy which Bewley could perform. (R. at 22). Consequently, the ALJ determined Bewley did not have a qualifying disability during the relevant period. (R. at 23).

Bewley now argues the ALJ erred by failing to properly weigh the medical opinion evidence regarding his degenerative disc disease and chronic pain – specifically, the opinion of his treating physician, Dr. Knight, who had treated Bewley's chronic pain with medications for several years. He also argues that the ALJ improperly weighed the opinion of an Agency examiner, Dr. Hoffman, by giving his opinions on Bewley's limitations only little weight. Relatedly, he argues the ALJ failed to properly evaluate the medical evidence, gave too much weight to the opinion of two agency reviewers, and should have found him more limited and the resultant RFC lead to a finding that he was disabled. As explained below, the ALJ did not err with respect to the issues Bewley asserts. Accordingly, there was no error in the ALJ's RFC determination requiring remand.

a. <u>The ALJ relied on substantial evidence when assigning weight to conflicting medical opinion evidence.</u>

Bewley first argues the ALJ failed to properly explain why he discounted the opinion of his treating physician, Dr. Knight, and the agency physician, Dr. Hoffman. Pl.'s Mem. 13-15 (ECF No. 15).

When the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains a number of medical opinions from different sources that are consistent with each other, the ALJ is required to use that evidence to make a determination on disability. 20 C.F.R. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent with each other or other evidence, the ALJ must evaluate the opinions and assign them persuasive weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Ordinarily, a treating source's opinion will be given controlling weight if it is well-supported by medically acceptable diagnostic methodology and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); <u>Lewis v. Berryhill</u>, 858 F. 3d 858, 867 (4th Cir. 2017); <u>Craig</u>, 76 F.3d at 590; SSR 96-2P, 1996 WL 374188 (July 2, 1996). But the ALJ need not accept opinions from a treating source in every situation. For instance, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating

source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported, it is due no special deference. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d); Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citing Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded.[3] See Lewis, 858 F.3d at 868; Dunn, 607 F. App'x at 267. Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2P at *5.

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically empower the ALJ—not the treating source—with the authority to determine whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

---

[3] The requirement to explain decisions regarding the weight accorded to medical evidence is not limited to evidence from treating physicians: in general, the ALJ must explain the reason he gave weight to any opinion before him. 20 C.F.R. § 404.1527(f)(2)(ii).

Bewley's primary argument is that the ALJ erred by affording little weight to the opinion of his treating physician, Dr. Knight. Pl.'s Mem. 15 (ECF No. 15); Pl.'s Reply 2-3 (ECF No. 18). According to Bewley's brief, Dr. Knight's extensive treating relationship with the Claimant merits strong deference to his opinion testimony. The Commissioner argues that the weight assigned to Dr. Knight's opinion testimony was supported by substantial evidence, and that the opinion Bewley relies upon was due no special deference in any event. Def.'s Mem. 17-21 (ECF No. 17). The Commissioner is correct.

Before analyzing the opinion testimony, the ALJ conducted an extensive review of the medical evidence, including Bewley's regular medication management by Dr. Knight, his examination by Dr. Hoffman, as well as his MRI and x-ray reports and treatment by Dr. Waters. (R. at 19-20). His opinions noted (correctly) that Bewley's records consistently reported good muscle strength, no gait disturbance, and no prescribed use of an assistive device. (R. at 20). Bewley received conservative treatment, consisting of only medication management since 2011, and regularly advised his physicians that the medications helped him to function. He also noted that Bewley reported regularly driving, shopping, and caring for his personal needs. (R. at 20).

In assessing the opinion testimony in Dr. Knight's disability evaluation, the ALJ explicitly gave the opinion "little weight," noting that it was inconsistent with Dr. Knight's own treatment record, which consistently recorded that Bewley's medications helped him function, and that he had a normal range of motion, good strength and no change in exercise tolerance. (R. at 21). The ALJ acknowledged that Bewley's pain could produce some deficits in concentration and persistence, but he observed there were no objective findings supporting the "extreme limitations" noted by Dr. Knight. (R. at 21).

The state agency consultants who reviewed Bewley's records also concluded he was capable of sedentary work. Both found that he was capable of standing or walking up to two hours per day and sitting up to six hours per day with normal breaks. (R. at 68, 106). Bewley argues the ALJ gave undue weight to these State Agency physicians' opinions. Pl.'s Mem. 17-18 (ECF No. 15). The ALJ gave significant weight to both opinions that Bewley had the ability to perform sedentary work because these opinions were "generally consistent with the physical examination findings, the treatment history, and claimant's activities of daily living." (R. at 21).

State Agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Therefore, when considering the opinion of a State Agency medical consultant, the ALJ must evaluate those findings just as he would for any other medical opinion. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ is required to explain the weight given to State Agency opinions. 20 C.F.R. §§ 404.1527(e), 416.927(e); see 20 C.F.R. §§ 404.1513a, 416.913a. Although consulting physicians' opinions cannot serve as a basis for denying benefits when contradicted by all of the other evidence in the record, they can be used as a basis for a determination of no disability if supported by other evidence before the ALJ. See Smith v. Schweiker, 795 F.2d 343, 348 (4th Cir. 1986).

In this case, the ALJ gave sound reasons for the weight assigned to the agency consultants' opinions. Bewley was only 23 at the date of his alleged onset, and his 15-year treatment history consists entirely of adjustments to his medication. He has not undertaken any physical therapy despite his doctor's recommendations, (R. at 40), nor any more intensive form of intervention. He repeatedly stated that his medications were helping him function. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) ("If a symptom can be reasonably

15

controlled with medication or treatment it is not disabling."). Both agency consultants noted that Bewley had 5/5 muscle strength, "no muscle atrophy (from lack of use)," and a normal range of motion. (R. at 68, 106). The ALJ relied upon the same objective evidence in weighing the opinion testimony. (R. at 21).

Bewley also argues that the ALJ improperly assigned little weight to the opinion of a consulting examiner, Dr. Hoffman, who also concluded that Bewley's back pain posed marked limitations. In limiting the weight given to Dr. Hoffman's opinion, the ALJ noted that it was based on a one-time examination and "not consistent with the record as a whole, including the treatment notes, findings of normal range of motion, claimant's statements to treating physicians that his medications helped him function, and his testimony that he could lift and carry 20 pounds." (R. at 21). Ignoring the bulk of the ALJ's justification, Bewley argues that his mention of the "one-time examination" suggests that he should have likewise rejected the agency consultants' opinions because they had not examined him at all. Pl.'s Reply 4 (ECF No. 18). But unlike Dr. Hoffman's opinion, the agency consultants' views were entirely consistent with Bewley's long record of conservative treatment, his consistent statements that his medications helped him function, his 5/5 muscle strength, and his normal range of motion. In this context, the mention of the one-time examination was not intended to diminish the importance of Dr. Hoffman's personal observations, only to note that – in the ALJ's view – his marked limitations focused too much on his observations during that single point in time without considering Bewley's long history of consistent, conservative, and apparently moderately effective treatment.

The ALJ's opinion carefully considered the entire range of medical evidence, so it was not inappropriate for the ALJ to assign greater weight to the agency consultants' opinions. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p,

1996 WL 374186, at *2 n.3 (July 2, 1996); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (the "RFC assessment must be based on all of the relevant evidence in the case record"). In evaluating the evidence in an appeal of a denial of benefits, the court does not conduct a blank slate review of the evidence, Smith, 795 F.2d at 345, or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. Johnson, 434 F.3d at 653.

While it is true that Bewley's treatment regimen has not completely alleviated his back pain, it has made it possible for him to maintain full time sedentary work of the type described by the VE in response to a hypothetical. The ALJ did not conclude that he was capable of all work, but crafted a severely limited RFC which accounted for the fact that he continued to require medication to cope with his symptoms and could not stand or walk for most of the day. As the VE testified, there are nonetheless jobs available within that RFC which Bewley can perform, and the RFC is supported by substantial evidence. Because the ALJ's examination of the medical evidence regarding the impact of Bewley's low back pain on his ability to work was supported by substantial evidence, that decision does not warrant remand.

## V. RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that the court DENY Bewley's Motion for Summary Judgment (ECF No. 14), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 16), and AFFIRM the final decision of the Commissioner.

## VI.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to provide a copy of this Report and Recommendation to all counsel of record.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 24, 2018